File Name: 08a0095n.06
Filed: February 5, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-3875

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

NDUE MECAJ,

      Petitioner-Appellant,

v.

      ON APPEAL FROM THE BOARD OF
      IMMIGRATION APPEALS

MICHAEL MUKASEY,

      Respondent-Appellee.

_____ /

Before:     KENNEDY, MARTIN, and CLAY, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge. Ndue Mecaj appeals the decision of the Board of
Immigration Appeals denying his motion to reopen his case following a deportation order issued *in
absentia*. Because the Board did not allow Mecaj the opportunity to rebut the presumption of receipt
of notice of a rescheduled hearing, we REVERSE and REMAND for a hearing on the merits of
Mecaj's claim that he did not receive notice.

I

      On February 10, 2003, a border patrol agent stopped Mecaj and placed him under arrest for
a lack of immigration documents. During an interview with the agent, Mecaj stated that he was
living and working in the United States and had recently moved to 30150 West 9 Mile Road, #
20813, Farmington Hills, Michigan 48336. The same day, INS (now Immigration and Customs

Enforcement) issued Mecaj a Notice to Appear to stating that he was to appear before an immigration judge at a date and time to be determined. The Notice to Appear listed his Farmington Hills address as his current residence.

Mecaj was released on February 18, 2003. A Notice to the Executive Office for Immigration Review was prepared by Deportation Assistant Donald Williams which listed Mecaj's address as 2658 Cove Bay Dr., Waterford, MI 48239. Mecaj was advised of his responsibility to update his address in case of a change and was provided a form on which to do so. On August 14, 2003, the government sent notice of a hearing set for November 20, 2003 to the Waterford address. Mecaj apparently received this notice since he attended the hearing as required. The notice stated that Mecaj must correct any errors in his contact information.

At the hearing, the judge recused herself because of prior relations with Mecaj's counsel. Notice of a rehearing set for June 22, 2004 was served in person to Mecaj, and again listed the Waterford address.

Due to a scheduling conflict with a judge's training day, the court yet again rescheduled the hearing, this time moving it from June 22 to June 15, 2004. Notice of this change was sent by mail to the Waterford address. Mecaj asserts that he never received this notice.

On June 8, 2004, Mecaj's attorney, filed a motion for continuance because of a scheduling conflict on June 22. The motion was denied without mention that the date had already been changed. On June 15, 2004, Mecaj did not appear at the hearing, and so the immigration judge ordered Mecaj removed. On June 22, Mecaj and his attorney appeared for the hearing and were told that the judge was away for training and that an order for deportation had been issued *in absentia*.

Mecaj then filed a motion to reopen his proceedings claiming that he had not received notice of the hearing. The immigration judge denied the motion because Mecaj was aware of the need to update his address and notice was sent to the Waterford address and not returned as undeliverable raising the presumption of receipt. Mecaj appealed to the Board of Immigration Appeals which adopted the immigration judge's decision.

II

This Court reviews the Board of Immigration Appeals' denial of a motion to reopen for abuse of discretion. *I.N.S. v. Abudu*, 485 U.S. 94, 96 (1988); *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004). The Board abuses its discretion when it acts arbitrarily, irrationally, or contrary to law. *Babai v. I.N.S.*, 985 F.2d 252, 255 (6th Cir. 1993).

Mecaj was ordered deported *in absentia* because he was not present at his hearing and notice of hearing was sent to his last known address, according to statute. 8 U.S.C. § 1229a(b)(5)(A). Normally proof that an alien did not receive notice would allow the alien to request that his case be reopened following a deportation order issued *in absentia*. 8 U.S.C. § 1229a(b)(5)(C).

The immigration judge ignored any evidence that Mecaj did not actually receive notice, and instead presumed receipt of notice based on the fact that notice was sent to Mecaj's last known address and was not returned as undeliverable. This was in error. Mailing notice raises only a *rebuttable* presumption of receipt. *Salta v. I.N.S.*, 314 F.3d 1076, 1079 (9th Cir. 2002). Since notice in this case was sent by regular mail rather than certified mail, that presumption is weaker. *Id*. Furthermore, the Board must consider all relevant evidence, including circumstantial evidence, offered to rebut the presumption of receipt. *Lopes v. Gonzales,* 468 F.3d 81, 86 (2d Cir. 2006).

Mecaj's affidavit stating that he did not receive notice, the fact that Mecaj attended his initial hearing, the fact that Mecaj presented himself in court on June 22 for the rescheduled hearing, and the fact that Mecaj did receive other correspondence sent to the Waterford address, must be considered, along with any other evidence Mecaj presents, in determining if Mecaj can overcome the presumption.

The government argues that no notice is required in this case. Notice is not required when the alien fails to provide a current address as required by statute. 8 U.S.C. § 1229a(b)(5)(B). However, because Mecaj did provide an address, the government remained under an obligation to send notice to *that* address. While it is true that Mecaj cannot now be heard to complain that he did not receive notice because he had moved, he may present evidence that he normally would receive correspondence at that location, yet did not receive notice. To this end he may point to the fact that he did receive other correspondence at the Waterford address even though he now avers that he lives at a different address.

The government also argues that under *Maghradze v. Gonzales*, 462 F.3d 150, 154 (2d Cir. 2006), receipt of notice should be imputed to Mecaj through the doctrine of constructive receipt because Mecaj failed to correct his address. We do not agree. We have not applied constructive receipt in this context, but assuming *arguendo* that it does apply, constructive receipt is appropriate where the circumstances indicate the alien is attempting to gain advantage by *thwarting* service of notice. In *Maghradze,* the Board of Immigration Appeals apparently considered the receipt requirement met if notice were properly provided (i.e., notice was mailed to the last address provided by the alien), but the alien thwarted delivery. *Id*; *see also, Sabir v. Gonzales*, 421 F.3d 456, 459 (7th

Cir. 2005) (suggesting that an "alien should not be able to make himself unreachable, and then later

ask to have his case reopened because he did not receive notice"). We note that we do not accept

the expansive definition of this concept, promulgated in *Maghradze*, that only if the alien fails to

receive notice due to "circumstances beyond his control" can he petition to reopen his case. *Id.*

Deportation is extraordinarily harsh, *see e.g., Gonzalez v. I.N.S.,* 996 F.2d 804, 811 (6th Cir. 1993)

(noting "the harsh results that deportation wrecks on aliens and their families"), and we would not

read the statute to impose such consequences based on mere error or carelessness without explicit

statutory instruction. *Cf. Staples v. United States*, 511 U.S. 600, 616 (1994) (finding that the "harsh

penalty" of up to 10 years imprisonment confirmed a reading of the statute that required a higher

level of fault where the statute was silent).

In this case, we find no evidence that Mecaj has in any way attempted to thwart service of

notice.[1] In fact, he appeared at the first scheduled hearing, and at the originally appointed time for

the second hearing. Thus Mecaj cannot be held to have constructively received notice since he did

not attempt to thwart receipt.

III

---

[1]The dissent points to the immigration judge's last sentence as a factual finding that Mecaj thwarted delivery. The immigration judge stated, "If respondent did not receive the notice of hearing because he moved without advising this Court of his change of address, it was due to his excusable [sic] inaction." We do not believe this is a factual finding that Mecaj thwarted delivery: the statement addresses a hypothetical that does not correspond to Mecaj's claim. Furthermore, even if it were a factual finding, it finds only "excusable [sic] inaction," not thwarting. Inexcusable inaction without more does not necessarily rise to the level of thwarting which we would require given the draconian penalty of deportation.

Because Mecaj provided an address as required by statute, and because he did not thwart receipt, we find that the Board erred in presuming or imputing receipt of notice, and therefore that it abused its discretion. We therefore REVERSE and REMAND for consideration that Mecaj did not actually receive notice at the Waterford address he provided.

**Kennedy, Circuit Judge, dissenting.**

Because the record supports the findings of the IJ and does not compel the conclusion that Mr. Mecaj did not attempt to thwart delivery of notice, I respectfully dissent. We can only disagree with an IJ's findings of fact regarding a motion to reopen when those findings amount to an abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 96 (1988). The IJ made two alternative findings, both of which allowed the IJ to deny Mr. Mecaj's motion to reopen. First, the IJ found that Mr. Mecaj did not require notice under the statute. Second, the IJ found that Mr. Mecaj should be charged with constructive receipt under 8 U.S.C. § 1229a(b)(5)(C)(ii) because he had thwarted the government's good faith attempt to provide him with notice of his removal hearing. *See Maghradze v. Gonzales*, 462 F.3d 50, 154 (2d Cir. 2006). Specifically, the IJ held: "If [Mr. Mecaj] did not receive the notice of [the rescheduled] hearing,[ it was] because [Mr. Mecaj] moved without advising this Court of this change of address, [so his lack of notice] was due to his [in]excusable inaction." J.A. at 30 (Order of Immigration Judge). Both findings are supported by the record, and therefore are not an abuse of discretion.

## I. No Notice Was Required

The majority erroneously concludes that Mr. Mecaj was entitled to notice. 8 U.S.C. § 1229a(b)(5)(B), however, provides that no written notice of a removal hearing shall be required if the "the alien has failed to provide the address required under section 1229(a)(1)(F)." 8 U.S.C. § 1229(a)(1)(F) explicitly mandates that the alien must provide his address in two circumstances. First, the alien must "immediately provide" an address when the Notice to Appear is completed. § 1229(a)(1)(F)(i). Second, and what is at issue here, the alien must "provide the Attorney General

immediately with a written record of any change of the alien's address or telephone number."  §

1229(a)(1)(F)(ii).

After "immediately provid[ing]" an address in Farmington Hills when taken into custody, J.A. at 59 (Notice to Appear dated February 10, 2003), Mr. Mecaj then changed his address on file to Waterford upon release from INS custody, J.A. at 49 (Notice to the Executive Office of Immigration Review (EOIR): Alien Address form dated February 18, 2003) ("Upon release from INS custody, the respondent[, Mr. Mecaj,] reported his[] address and telephone number will be: [in Waterford]."). Mr. Mecaj, however, now claims that he was not living in Waterford, but was living in Farmington Hills. J.A. at 42 (Affidavit of Ndue Mecaj) ("I reside at . . . Farmington Hills . . . ."); *see* Petitioner's Brief at 9 (referring to the Waterford address at the time of Mr. Mecaj's release from custody as Mr. Mecaj's "old address"). Mr. Mecaj, after having provided an incorrect address in Waterford, never updated his address to reflect the fact that, as he now claims, he was living in Farmington Hills.[1] Such failure to discharge his statutory duty to update and correct his address means that the IJ can decide that he must face the consequences under the statute, which is an order of removal without notice being required. *See* 8 U.S.C. § 1229a(b)(5)(B). Because, based on the facts admitted by Mr. Mecaj, notice was no longer required, the IJ did not abuse his discretion in denying Mr. Mecaj's motion to reopen on the grounds of failure to receive notice.

The majority protests this result based on a theory that the petitioner did not advance and for which not a shred of evidence exists in the record. They say that Mr. Mecaj "did provide an

---

[1] He did not update it despite, as the majority admits, Maj. Op. at 2, being informed by the immigration court that he had provided the Waterford address and that the immigration court would continue to use it until Mr. Mecaj informed it of a different address.

address," namely the one in Waterford, and that he therefore discharged his statutory duty to provide a correct address because he can claim that he expected to, and yet did not, receive notice at "*that* address" in Waterford. Maj. Op. at 4. First, while Mr. Mecaj certainly could make such an argument and offer supporting evidence, if he had any, the majority ignores both the fact that he did not so argue and the fact that he did not present a single bit of evidence in that regard. Mr. Mecaj, instead, asserted that he "reside[s] at . . . Farmington Hills," and nowhere claimed that he expected to receive notice at the Waterford address. *See* J.A. at 42 (Affidavit of Nude Mecaj). Indeed, Mr. Mecaj's only argument, in fact, is that the government sent notice to the wrong address. *See* Petitioner's Brief at 10 (referring to the Waterford address as "incorrect"). The only evidence the majority cites for its own argument is the fact that somehow Mr. Mecaj received the first notice, which was mailed only to Waterford. The majority prefers to draw the conclusion that this received delivery indicates that Mr. Mecaj expected to receive notice in Waterford. This conclusion, however, directly contradicts Mr. Mecaj's assertion in his brief that the Waterford address was "incorrect." Indeed, there are numerous explanations for Mr. Mecaj's receipt of the notice sent to Waterford that would be consistent with Mr. Mecaj's own assertions. The majority's assuming of facts not argued, and contrary to those asserted, by the petitioner is made more unwarranted by the fact that Mr. Mecaj carries the burden of proof when moving to reopen. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii). Mr. Mecaj could have, and yet did not, assert the majority's assumed facts in his affidavit, nor did he even argue in his brief that the majority's assumed facts are true. I do not understand how the majority can conclude that the IJ *abused his discretion*, a decision which the BIA

affirmed, based on an argument which the petitioner did not assert and for which there is no evidence in the record to carry the petitioner's burden of proof.

## II. Mr. Mecaj Should be Charged with Constructive Receipt

The IJ also found, in the alternative, that Mr. Mecaj should be charged with constructive receipt of notice because he thwarted the government's attempt to provide him with notice of his rescheduled removal hearing. The majority erroneously cites two reasons for disregarding the IJ's alternative holding.

First, the majority asserts that the IJ did not find that Mr. Mecaj thwarted the government's attempt to provide him notice of his rescheduled removal hearing. They believe that the IJ was "address[ing] a hypothetical that does not correspond to Mecaj's claim." Maj. Op. at 6 n.1. This fundamentally misinterprets the IJ's holding. The IJ first held that Mr. Mecaj was not entitled to notice at an address different from the one he had supplied. The IJ then held in the alternative that if in fact Mr. Mecaj was entitled to notice yet did not receive it, his lack of notice "was due to his [in]excusable inaction." J.A. at 30. I do not understand how the majority can characterize this alternative holding as a random aside by the IJ "that does not correspond to Mecaj's claim."

Second, the majority asserts that even if the IJ in fact found Mr. Mecaj thwarted the government's attempt at notice, the IJ abused his discretion because there was "no evidence that Mecaj has in any way attempted to thwart service of notice." Maj. Op. at 5. This conclusion, however, ignores the record in this case.

The IJ's alternative holding, that Mr. Mecaj was at fault for thwarting the government's attempt at notice, was in fact well-supported by the record. The majority emphasizes that Mr. Mecaj

at one time gave the government an address in Farmington Hills, which he now claims was his correct address. Maj. Op. at 5. This completely ignores the fact, which the IJ found and the majority admits, that Mr. Mecaj then amended his address to one in Waterford. J.A. at 29 (Order of Immigration Judge); Maj. Op. at 4 (noting that the last address Mr. Mecaj provided was in Waterford). The only reason the government's notice did not reach Mr. Mecaj as he claims, therefore, is because Mr. Mecaj provided an address to be used by the immigration court that he now claims was incorrect. I do not understand how this does not "make himself unreachable." *See Sabir v. Gonzales*, 421 F.3d 456, 459 (7th Cir. 2005).[2]

If giving the immigration court the wrong address were not enough, there were more facts supporting the IJ's conclusion that Mr. Mecaj thwarted the government's good faith attempt at notice. Mr. Mecaj appeared at the November 20, 2003 hearing with his attorney. J.A. at 56. The only notice of that hearing, however, was sent to the address that Mr. Mecaj had provided for contact by the immigration court, which was Mr. Mecaj's Waterford address. J.A. at 57 (Aug. 14, 2003

---

[2] The majority notes its disagreement with an "expansive definition of" thwarting delivery of notice, which it believes other Circuits have adopted. Maj. Op. at 5. They seem to believe that these definitions are incorrect because an alien must have some sort of invidious intent to avoid notice before being charged with constructive receipt. Other Circuits' definitions, however, were formulated in a manner consistent with the statute. 8 U.S.C. § 1229a(b)(5)(C) discusses the grounds an alien can prove when moving to reopen removal proceedings when the alien has been ordered removed *in absentia*. Mr. Mecaj was attempting to carry his burden under (C)(ii). That subsection requires Mr. Mecaj to "demonstrate[] that [he] did not receive notice . . . [] and [demonstrate that] the failure to appear was *through no fault of the alien*." 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added). The majority wants to read out the requirement that Mr. Mecaj prove that it was not his fault that notice did not reach him, and instead require that he merely prove he had no invidious intent to avoid notice. While the majority does this because of the harsh consequences of deportation, it is Congress's judgment that such consequences are required, and the statute ensures that the alien is repeatedly notified about the harsh consequences of failing to appear and failing to keep the government current on his address. *See* 8 U.S.C. § 1229(a)(1)(F)(iii), (a)(1)(G)(ii).

Notice of Hearing set for Nov. 20, 2003). If we believe Mr. Mecaj's assertions that he was not living in Waterford at that time, the notice must have been forwarded to him by the postal service, given to him by other occupants, or sent to him in some other unusual fashion. All possible manners of delivery would draw one's attention to the fact that this correspondence had not been sent to one's current address. The form not only informed him of the date and time of the removal hearing, it also gave him these instructions regarding his address:

> IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION COURT DETROIT, MI THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE ON THE ATTACHED FORM EOIR-33. ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM THE COURT WHERE YOU ARE SCHEDULED TO APPEAR. IN THE EVENT YOU ARE UNABLE TO OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE OF ADDRESS."

J.A. at 57 (Notice of Hearing in Removal Proceedings). An alien thwarts the government's attempt to provide notice when that alien, through extraordinary means of delivery, has his attention drawn to the fact the government has an incorrect address on file, and yet the alien fails to correct that address, despite being instructed to do so in capital letters. Indeed, Mr. Mecaj failed to correct his

address even though a change of address form, Form EOIR-33, was provided to him with the first notice, even though he could have sent in a change of address on regular paper if he lost that form, and even though he in fact attended the hearing on November 20th and could have told the IJ or some other court personnel in person that his address on file was incorrect.

Unlike the majority, I do not believe that these facts provide "no evidence" that Mr. Mecaj thwarted the government's good faith attempt to provide him notice of his rescheduled removal hearing. Indeed, the opposite is true; these facts are enough to find that Mr. Mecaj thwarted the government's attempt at providing him notice. The government cannot know it has the wrong address on file, and the alien should be held accountable, when the government is using an address: (1) that was the last one provided by the alien to the immigration court; (2) that had apparently been successful in previously notifying the alien of a removal hearing because the alien had appeared for a hearing whose date was sent only to that address; and (3) that the alien never indicated was wrong or had changed, despite the fact that the government had repeatedly informed that alien that it was using that address. If it is true that Mr. Mecaj never received this notice, then it is surely true that he thwarted the government's attempt to contact him because he gave the government the Waterford address to be used by the immigration court to contact him, he had previously responded to notices sent to Waterford, he was repeatedly made aware that the government believed him to live in Waterford and would be contacting him at the Waterford address, and yet he did not update or correct that address as the government requested and as mandated by statute. Even if the majority, in its own independent judgment, believes Mr. Mecaj made a "mere error or [was] careless[]," Maj. Op. at 5, I do not think that this belief is so borne out by the record to find that the IJ abused his

discretion in ruling to the contrary. While the IJ could have chosen to grant Mr. Mecaj's motion to reopen despite the above facts, it was not an abuse of discretion for the IJ to hold that Mr. Mecaj was not entitled to actual notice nor was it an abuse of discretion to hold in the alternative that Mr. Mecaj should be charged with constructive receipt for thwarting the government's ability to provide him notice. I therefore respectfully dissent.